IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITES STATES OF AMERICA, | ) | CASE NO. 1:25CR00623 |
| Plaintiff, | ) | JUDGE GAUGHAN |
| vs. | ) | |
| | ) | **DEFENDANT, MICKEY HODGE SENTENCING MEMORANDUM** |
| MICKEY HODGE, | ) | |
| Defendant. | ) | |

Defendant, Mickey Hodge by and through undersigned Counsel, respectfully submits the instant Sentencing Memorandum to support his request for a sentence that is sufficient but not greater than necessary to achieve the statutory goals of sentencing under to Title 18, United States Code §§ 3553(a) and 3661. Counsel respectfully submits the following Memorandum to assist the Court in fashioning Mickey Hodge sentence.

Defendant takes issue with paragraph 82 of the Presentence Investigation Report in that he has shown complete acceptance in this matter based upon his plea of guilty as well as his apology letter attached hereto. As such, a 3-level reduction for acceptance of responsibility under USSG §§ 3E1.1 (a) and (b) should be taken from an adjusted criminal offense level pursuant to the Plea Agreement of total offense level before acceptance responsibility 29 pursuant to paragraph 18 of the Plea Agreement with an adjusted total offense level with acceptance of responsibility of 26 for a sentencing guideline range of 97 to 121 months period.

Respectfully Submitted,

rodger pelagalli
Rodger A. Pelagalli (0034530)
RODGER A. PELAGALLI CO., L.P.A.
4700 Rockside Road, Ste. 320
Independence, OH 44131
RAPesq@aol.com
440-845-3030 (phone)
440-845-3428 (fax)

*Attorney for Defendant*

## MEMORANDUM

### I. Introduction

District courts have great discretion in imposing the lowest sentence that will reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from future crimes, and provide Mickey Hodge with needed educational or vocational training, medical care, or other correctional treatment. Gall v. United States, 552 U.S. 38 (2007); Kimbrough v. United States, 552 U.S. 85 (2007); United States v. Booker, 543 U.S. 220 (2005); 18 U.S.C. § 3553(a)(2).

### II. Application of Other Sentencing Factors

#### A. Mickey Hodge Personal History and Characteristics

Mickey Hodge was born on 2-24-2003 in Cleveland, Ohio to Jessie Richmond and Mickey Hodge.

Unfortunately, the defendant's young life and formative years were at best, difficult. The fact that his father was fell under the scourge of substance abuse and his father having been

incarcerated during his childhood, he ended up being adopted by aunt and uncle. During this time, he certainly felt the loss of his parents and as he perceived, “less love” than the biological children of his aunt and uncle received. He was told several times that he was not their “real child” and that he would probably end up “like his father”. (see paragraph 65 in Presentence Investigation Report)

**B. Educational and Employment Consideration**

While Mickey attended in Lincoln West High School in Cleveland through the 12th grade, he had continuous and chronic reading and writing. Throughout his education, he had IEP’s and received direct instruction.

As regards his employment over the years between January 2025 and March of 2025, he was employed at Popeyes, a retail fast food establishment. Prior to that from 2022-2025, he worked part-time under the table mechanic. Prior to that, 2021-2022, he was employed part-time as a mover for American Freight Furniture and Mattress in Brooklyn, Ohio. He also worked as a handyman cutting grass, cleaning houses, and babysitting.

**C. Mickey Hodge Has an Extremely Low Likelihood of Recidivism**

Mickey Hodge’s Criminal History Score is a 2 and the PSR reflects that he falls into the Criminal History Category of II. The PSR also indicates that the calculations contained within that report are not consistent with the Plea Agreement in that Mr. Hodge appears to have agreed with the government to a total offense level before acceptance of responsibility of 29 with a reduction of 3 points for acceptance of responsibility pursuant to USSG §§ 3E1.1 (a) and (b).

As such, his adjusted criminal offense level is 26.

**D. Mr. Hodge Accepted Responsibility for his Offense.**

Not only did Mr. Hodge plead guilty in this case, but he has been completely truthful and forthcoming with all aspects surround this matter. In doing so, he has accepted full responsibility for the offense and assisted authorities in the investigation and prosecution of this misconduct. See, attached letter of apology incorporated herein by reference.

## III. Other Considerations

**A. Mr. Hodge Should be Recommended for 12-Month in a Half-Way House at End of Any Sentence of Incarceration.**

Undersigned Counsel respectfully ask this Court to sentence Mr. Hodge to a term of incarceration of 97 months, which reflects the low end of the guideline range. Such a sentence will enable him to be promptly placed in a half-way house to continue with counseling and education, and provide a strong incentive for him not to re-engage in this type of illegal conduct. However, if the Court imposes a longer term of incarceration, Counsel respectfully asks the Court to recommend 12 months in a half-way house at the end of any incarceration term imposed. The Second Chance Act of 2007, codified at 18 U.S.C. § 3624, increased the potential length of time a federal inmate can be placed in a half-way house from 6 months to 12 months. *See* 18 U.S.C. § 3624 9c 0 91 0. The Bureau of Prisons will typically honor the Court's recommendation. If Mr. Hodge receives a sentence of incarceration, he would greatly benefit from the additional resources he would receive during twelve (12) months of half-way house placement (as opposed to just 6 months) as he transitions from incarceration back into society.

## IV. § 3553 Factors

As this Court is aware the Sentencing Guidelines are merely one step in the process in determining an appropriate sentence for the Defendant. In addition, the Court is aware it should evaluate the factors listed in 18 U.S.C. § 3553(a) to determine a reasonable sentence for the Defendant. The Court must consider the following 3553 Factors: The nature and circumstances of the offense and the history of the Defendant; the need for the sentence imposed (considering seriousness of offense, deterrents, protecting the public, and providing the Defendant with needed treatment in the most effective matter); the types of sentences available; sentencing ranges; policy statements issued by the Sentencing Commission; need to avoid unwarranted sentencing disparities; and restitution to the victim of the offence.

First, looking at the nature and circumstances of the current offense and the history of the Defendant, the Court should evaluate several factors. The Defendant accepted responsibility for his actions in that he plead to the charge. The Defendants timely notice to the Government of his intent to plead guilty to the indictment or charges, has saved the Government time, money and energy. The Defendant understands the seriousness of the crimes he has committed and expresses his sincere remorse and apology. The Mickey Hodge was involved in the current offense as a means to make what he thought was "easy money". It was not and he understands he must now serve his time.

The second factor to be evaluated by the Court is to assess the need for the sentence imposed. The Defendant acknowledges the seriousness of his action and understands the extensive incarceration time he may be facing. Mickey Hodge has worked for the last several years consistently since high school. He has not made a consistent wage, but has helped out with his family. The Defendant requests that this Court consider the Defendant's attempt to maintain gainful employment as a testament to his desire to refrain from illegal conduct and remain a productive citizen. Even when he could not find work, he worked at many odd jobs.

Thirdly, the Defendant requests this Court consider the over representation of his criminal history listed in the PSI. Mickey Hodge has a total of 2 points due to 2 prior convictions. Mickey Hodge does not believe these two incidents properly represents his lack of criminal involvement throughout his 23 years.

Regarding the third and fourth factors of the 3553(a) the Court should review the kinds of sentences available. As noted above, Defendant requests this Court consider a sentence that is sufficient but not greater than necessary to fulfill the requirements of the 3553 Factors. The Defendant believes an appropriate sentencing range would be between97 months, if not lower, based upon the over representation argument listed in the preceding paragraph. Defendant believes a sentence that includes a mixture of incarceration plus alternatives, which include conditions of therapy and supervised release, would be most effective in reducing the risk of recidivism.

Finally, the Defendant requests the Court recommend a drug treatment program as noted in this Sentencing Memorandum.

## V. Conclusion

For the reasons discussed above, Mr. Hodge respectfully requests that the Court consider the factors highlighted in support of a sentence that is "sufficient but not greater than necessary" to achieve the statutory purposes of punishment, as required by 18 U.S.C. § 3553(a). Given the mitigating factors of Mr. Hodge's offense, his personal history, and his amenability to rehabilitation, Mr. Hodge respectfully requests this Honorable Court impose a term of incarceration of 97 months.

Respectfully Submitted

rodger pelagalli

Rodger A. Pelagalli (0034530)
RODGER A. PELAGALLI CO., L.P.A.
4700 Rockside Road, Ste. 320
Independence, OH 44131
440-845-3030 (phone)
440-845-3428 (fax)
RAPesq@aol.com

*Attorney for Defendant*

CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2026, a copy of foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

Respectfully Submitted

rodger pelagalli

Rodger A. Pelagalli (0034530)
RODGER A. PELAGALLI CO., L.P.A.
4700 Rockside Road, Ste. 320
Independence, OH 44131
440-845-3030 (phone)
440-845-3428 (fax)
RAPesq@aol.com

*Attorney for Defendant*

Honorable Judge Gaughan
Carl B. Stokes U.S. Court House
801 W. Superior Ave. 17A
Cleveland, OH 44113

**RE: <u>United States v. Mickey Hodge</u>**
**Case No.: 1:25 CR 00623**
**Judge Gaughan**

Dear Judge Gaughan:

I am corresponding with you at this time, with the assistance of my counsel, to tell you that I agree completely with the facts as recited in the Plea Agreement which were clearly explained to me.

The facts and circumstances that have led me to your court, to be judged by you, I am not proud of as a man. I understand the nature of the wrong that occurred and wish only to get on with the rest of my life in a positive and meaningful way.

I apologize to you, the United State Government, and the agencies involved. I apologize to the community and any victims.

I am responsible for my actions. I declare to you today that I shall do my absolute best in the future not to appear before you or any other judge for any wrongdoing.

I understand you must punish me, and further understand that that is the price I pay for my actions outlined in the factual basis of the Plea Agreement.

I stand ready willing and penitent to serve whatever you believe is the appropriate sentence for these crimes.

Respectfully Submitted,

Mickey Hodge

Dear Honorable Judge, My name is Mickaya Hodge , and I am writing this letter on behalf of my brother, Mickey Hodge Jr , I know that he is here today because of the choices he made, and I am not writing this letter to excuse those choices. I am simply asking that, before making your decision, you please consider the person I know him to be and the circumstances that have shaped his life.

My brother and I were adopted by our aunt and uncle. Growing up we've always been curious of our biological parents which as we got older led us to things that affected us deeply, and we have both had to carry the weight of circumstances that were beyond our control. There has also been a history of unhealthy influences within our biological family. I believe that some of the struggles and patterns passed down through our bloodline have had a negative influence on both of us. That does not excuse anyone's actions, but I believe it is important to understand where some of his struggles came from.

Despite everything he has been through, my brother has always been so much more than his mistakes. He has been one of the most important people in my life. He is not only my brother; he is my best friend. I have shared some of the hardest moments of my life with him, and he has been there for me when I needed someone most but most of all he is my flashlight in life.
He has also played an important role in helping me raise my son. He has been there to help me, support me, and be a positive presence in my child's life. His absence does not only affect me—it would affect my son as well. My brother is someone my son loves and looks up to, and I hope the Court will consider the family who will be affected by his sentence.

My brother has also struggled with his mental health for a very long time. I have seen firsthand how difficult it has been for him to deal with his emotions, thoughts, and circumstances. I believe that some of the decisions he has made have been connected to struggles that he has not always known how to manage. I am not asking the Court to ignore what happened, but I am asking that his mental-health struggles and his personal history be taken into consideration when determining what happens next.

I also want to say that I am sorry that my brother is standing before you today. I know I cannot apologize for his actions or take responsibility for choices that were his to make, but as his sister, I am deeply sorry for the situation he is in and for anyone who was hurt by what happened. I wish things had been different, and I wish he had gotten the help and guidance he needed before reaching this point.

I believe my brother is capable of becoming a better person and making better choices. I have seen the good in him. I have seen his kindness, his loyalty, his love for his family, and the person he can be when he is doing well. I truly believe that he is not beyond help or redemption.
I respectfully ask that you consider giving my brother an opportunity to receive the help he needs and to work toward becoming the person I know he is capable of being. If there is a way for him to receive mental-health treatment, counseling, rehabilitation, or other support as part of his sentence, I sincerely hope the Court will consider it.

I love my brother very much, and I will continue to support him and encourage him to make better choices. I hope that when you sentence him, you will see not only the person who made a mistake, but also the brother, uncle, son, and friend who has brought love and support into the lives of the people around him.

Thank you for taking the time to read my letter and for considering my words.

Respectfully,
Mickaya Hodge

To Judge Gaughan,

My name is DeAngelo Zinter and Mickey Hodge is my brother. When Mickey got arrested it hurt all of us; especially me. I've never had a father or older brother until Jack (Juaquim) came. Then Jack was murdered. Mickey was the only older brother I had.

Mickey would always do what ever he had to keep me out of trouble. Mickey would stay up to watch movies with me and would talk me out of suicide many times. He also use to go on walks to the park with me. We would also go to his sister's house and making sure to be an fantastic uncle to his nephew. Mickey can always make people laugh. He use to help others. When Mickey was home he would always have his room and the whole downstairs cleaned up. He would also help our little brothers with schoolwork.

Mickey gave everyone a shoulder to cry on. This was at his own expense. Always playing down his own mental health. Mickey would claim his own pain as being handled. In truth, he was becoming more and more depressed.

Mickey is not a bad person. He just made some mistakes. I have made many mistakes in life. Now I am maturing. On August 27th, I'm going to TriC for plumbing.

Please know Mickey isn't just my brother but also the only father figure I've have ever had.

Thank you,

DeAngelo Zinter

The Honorable Judge Gaughan

Re: Character Reference for Mickey Hodge

Dear Judge Gaughan,

I am writing this letter on behalf of Mickey Hodge in advance of his sentencing. I understand the seriousness of the offenses before the Court, and I do not write to excuse or minimize the consequences of his actions. Rather, I hope to offer my personal perspective of Mickey's character and the qualities I have witnessed.

I got to know Mickey through a friend of mine and have always found him to be a respectful, polite, and hardworking young man. I hired him to perform work around my home. He consistently completed the jobs efficiently, independently, and with care. He was dependable, took pride in his work, and never required constant supervision.

Beyond my own experiences, I have always known Mickey to be someone who cared deeply about the people around him. He regularly supported family members and friends whenever he could and was the type of person willing to help others without expecting anything in return. These are qualities that I believe genuinely reflect who he is at his core.

Mickey has undoubtedly made serious mistakes, and I know that he accepts responsibility for them. Accountability is an important part of justice, and I believe he understands that his actions have caused harm and carry significant consequences. While his difficult upbringing cannot excuse the choices he made, I do believe it provides important context. He grew up without the stability, guidance, and positive role models that many young people rely upon. In many ways, he became a product of circumstances that would have challenged anyone.

Before the events leading to his current incarceration, I saw Mickey making sincere efforts to rebuild his life and surround himself with more positive influences. Tragically, he then experienced the devastating loss of his best friend—a man he considered his brother. Witnessing that death deeply affected him and, from my perspective, caused him to lose direction during an already vulnerable period in his life.

Since being detained, I have seen a different side of Mickey. He has accepted responsibility for where he is today and has spoken repeatedly about wanting to make meaningful changes. He has expressed his intention to participate fully in the educational and rehabilitative programs available to him while incarcerated, and he sincerely hopes to emerge as a better man with the opportunity to live a productive, law-abiding life.

For these reasons, I respectfully ask the Court to consider imposing a sentence that holds Mickey accountable while also preserving his opportunity for rehabilitation. My hope is that

he will emerge from prison while he is still young enough to rebuild his life, reconnect with his family, and become a positive, contributing member of society. I truly believe he has the capacity to do so if given that opportunity.

Thank you for taking the time to consider my thoughts and perspective. I appreciate the difficult responsibility before the Court and respectfully ask that you extend mercy where you believe it is appropriate.

Respectfully,

*Sarah Hihn*

Sarah Hihn

19509 Riverview Ave

Rocky River, OH 44116

To Judge Gaughan

Hello, my name is Hugo Zinter and I'm 12 yrs old. Mickey Hodge is my older brother. When my brother Jack died my family fell apart. My sister Elez stayed away for almost 3 week. My sister Anita didn't come around often. My brother DeAngelo stayed so angry. Mom was just very quiet. The happiness was just gone. My younger 9 yr old brother, Manny ended being sent to Guidestone because he has autism and mental illness and was hurting everyone. I can hit back harder but my mom doesn't hit so she got hurt the most. My brother Mickey stopped being home much.
After we buried Jack and baby Giovanni, Mickey would only home to shower and change clothes. He would tell us he loved us and hug mom and just leave. She said he was having a hard time. I was having a hard time too. But I was not allowed to leave. Mom said because the killer was not in jail yet. He is now.
I know you are a kind and fair judge. I wish you consider give my brother less time. Mickey is also kind and fair and has a family who loves him and needs him here.

Thank you

Hugo Zinter

Honorable Judge Gaughan,

Cheryl Zinter and her family have been an important part of my life for over 50 years. This is how I first came to know Mickey Hodge. When I initially met him he was very quiet and reserved, shy and somewhat difficult to get to know. Over time I have seen that he is a kind, compassionate man. He consistently makes efforts to listen to others and be attentive to their needs. He often helps care for the kids in the house and assists with cleaning and maintaining the space, as he knows chores can sometimes be difficult for Cheryl to keep up with.

Mickey has been deeply affected by the death of his best friend. He initially had a difficult time coping with his loss and turned to self destructive behavior. Through his pain he continued to think of others even during this time, keeping his coping methods away from Cheryl and her children.

During his incarceration he has been endeavoring to improve himself, staying out of trouble, and turning to prayer and self reflection. If given the opportunity he will show his commitment to changed behavior. I truly believe Mickey to be a kind and compassionate man worthy of mercy.

Sincerely,

Morene Moliff

To The Honorable Judge Gaughan,

Thank you for giving me the opportunity to write on behalf of my son, Mickey Hodge. I am not his mother by birth. He is the son of my heart.

First and foremost- my apologies go out to the victims and their families. Any words I say can't take away any of your pain, and any anger you have is righteous. You and your families are innocent and deserved none of this. We are truly sorry.

I am writing to the court to request consideration of various details while handing out my son's sentence today.

Too many tragic events directly contributed to Mickey's mental health crisis which created the conditions for these circumstances.

This is not an excuse, rather context which contributed to the events that bring us here.

On April 11th 2025 my son, Juaquim (Jack) was murdered. It was his 19th birthday.

Jack was more than Mickey’s best friend of many years, he considers him a brother. It was through this bond that Mickey became my son.

Jack was on his way to have cake and ice cream with some friends. A single bullet hit his heart and killed him instantly. The killer is sitting in Juvenile Detention Center of Cleveland at the time I am writing this letter, looking at significantly less time for this brutal act than Mickey is today.

Our family with Mickey buried Jack on April 25th 2025. When he died, he was about to become a first time father. The stress of his death and the violence surrounding it caused Jack's fiancée to go into premature labor later that night.

Giovanni Juaquim was born the night we laid Jack in the ground. My grandson only lived three days; then he went to join his father in heaven.

My family was torn apart by this loss. Mickey and other family members blamed themselves for not being able to protect Jack or his son. The guilt and anger were extreme. I knew Mickey was taking everything very hard. I knew he was not coming home much, respecting the rules that I do not allow drinking in my home.

Mickey was trying to drown out his pain. I was grieving and holding my family together at the same time. I blame myself for not noticing or being able to stop his self sabotage.

Thank you for allowing to try to explain what Mickey means to me and my family.

The situation that brings us here does not show anyone the true heart Mickey holds and his gentle hugs. The whole family- his numerous younger brothers and sisters and I adore him. He

has never showed anger with any of us. Mickey is our peacemaker. He is incredibly patient and kind with his young autistic brothers. His presence is warm with an infectious smile. Mickey has a calm nature and a hyperactive body.

He has been known to clean and rearrange the house while the rest of us are sleeping; contributing and helping with chores at the time he is able.

He even cleans with a broom instead of a vacuum out of consideration for waking anyone up. He is thankful for every meal- even if it isn't to his preference, he is always grateful.

Mickey looks out for those who need him the most at any given moment. He simply shows up, offering help as needed with physical labor or emotional support. I will always feel guilty because I was unable to reach him when he needed me the most.

Lastly, I want to share my deepest belief in Mickey. I know he will go the programs offered through the prison system to become a productive member of society. Mickey has been attending Mass and prayer groups while he has been incarcerated. I believe that his surrender to a higher power will strengthen him to completely change his path. Prayer changes everything. Mickey understands he must give up old friends and habits. He will grow strong enough to resist unhealthy influences and find new ways to cope with his pain.

I am hoping for Mickey to be sent to a facility with opportunities to contribute to his community, heal, and improve himself. If it is possible for the court to grant this, I humbly ask your consideration.

Please consider my petition for less time away from his family with a longer probation so he can show you his commitment to change. His family is ready to provide him the support he needs to keep his commitments to the changes he has already made. I have already lost one son. I'm 62 years old and just want more time with Mickey.

Respectfully,

Cheryl Zinter

Judge Goughan,

My name is Sharon Stahler. I was introduced to Mickey a few years ago by my friend Cheryl Zinter. I found Mickey to be a quiet, respectful young man. When I learned that he was sleeping on the floor, I invited him to accompany me to the Lakewood Music Department mattress sale fund raiser, and told him to pick out one that he liked. He immediately went to the budget-priced end of the floor and made a reasonably priced selection. Mickey politely expressed his gratitude for my purchase.

Another incident that stands out in my memory occurred when many of the family had gathered at the high school graduation ceremony for one of the members. Mickey was sitting alone, quietly observing. Nearby, there was a preschool child who was reaching the end of her supply of self-control (mom was occupied elsewhere). Mickey noticed the child, realized what was happening, and reached out to gently calm the child and avert the meltdown. I think he would make a good Dad some day.